UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER A. STANTON, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21-CV-89-JD-MGG |
| LIAW, et al., | |
| Defendants. | |

OPINION AND ORDER

Christopher A. Stanton, an inmate at Westville Correctional Facility ("Westville") proceeding without a lawyer, seeks preliminary injunctive relief related to his medical care. (ECF 9.) The court ordered a response from the Warden at Westville, which has now been received. (ECF 20.)

As outlined in the screening order, Mr. Stanton claims that he has a mass in his abdomen that the Westville medical staff refuses to treat. (ECF 5.) He was permitted to proceed on an Eighth Amendment claim against Dr. Andrew Liaw for failing to treat him, as well as on a claim for injunctive relief against the Warden in his official capacity related to his ongoing need for medical care. (*Id.* at 3-4.) He seeks an order requiring that medical staff immediately provide him with an ultrasound and/or MRI of his abdomen while this case is pending. (ECF 9 at 7.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). To obtain

a preliminary injunction, the moving party must show: (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). If these elements are satisfied, the court then "weighs the competing harms to the parties if an injunction is granted or denied and also considers the public interest." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). An injunction ordering the defendant to take an affirmative act rather than merely refrain from specific conduct is "cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (citation omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted). The court must also bear in mind that "[p]rison officials have broad administrative and discretionary authority over the institutions they manage." *Id.* at 683 (citation omitted).

Under the Eighth Amendment, inmates are entitled to adequate medical care, although they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), or to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Mere disagreement with a medical professional does not establish an Eighth Amendment

2

violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted).

The Warden argues that Mr. Stanton is receiving constitutionally adequate care and is not entitled to a preliminary injunction. (ECF 20.) The response and attached records reflect that Mr. Stanton suffers from certain chronic conditions, including major depression and diabetes.[1] (*See* ECF 20-2 at 6-7.) He has regular chronic care visits with medical staff approximately once a month. (*See id.* at 2, 6-7, 10; ECF 20-3 at 5.) Between November 16, 2020, and February 23, 2021, Mr. Stanton's abdomen has been examined four times by three different medical professionals, and no mass has been found. (ECF 20-2 at 1-4, 5-9, 10-14; ECF 20-3 at 5-8.)

Specifically, those records reflect that on November 16, 2020, Mr. Stanton was seen by Nurse Francis Ekeh after he submitted a health care request complaining about a mass in his abdomen. (ECF 20-2 at 1-4.) Nurse Ekeh noted that Mr. Stanton's left and right abdominal quads appeared normal, and her physical examination revealed no visible or palpable abdominal mass. (*Id.*) She noted that bowel sounds were normal and that Mr. Stanton's abdomen was soft and non-tender upon her examination. (*Id.* at 2.) She noted: "No bulge nor knot observed as alleged[.]" (*Id.*)

---

[1] Medical records reflect that he has also been diagnosed with antisocial personality disorder and has a history of engaging in hunger strikes. (ECF 20-2 at 6.)

On November 24, 2020, Dr. Liaw saw Mr. Stanton for a chronic care visit, and he again complained about the mass. (*Id.* at 5-9.) However, Dr. Liaw's physical examination revealed no visible or palpable abdominal mass. (*Id.* at 5.) The doctor noted that Mr. Stanton's vital signs were all within normal limits, and that he was also able to move his body and ambulate without issue to and from the exam room and during the examination. (*Id.*) On January 5, 2021, Dr. Liaw saw Mr. Stanton for another chronic care visit, during which he again raised a concern about an abdominal mass. (*Id.* at 10-14.) Dr. Liaw again physically examined Mr. Stanton but could find no visible or palpable abdominal mass. (*Id.* at 10.) On that date, Nurse Alice Kiner also palpated Mr. Stanton's abdomen without any unusual findings. (*Id.*)

On February 23, 2021, Dr. Liaw physically examined Mr. Stanton at a chronic care visit and again could not find any visible or palpable abdominal mass. (ECF 20-3 at 5.) Mr. Stanton was observed to have no abnormalities in twisting and/or turning his abdominal area, or in breathing. (*Id.*) Dr. Liaw observed that Mr. Stanton's abdomen rose "appropriately and symmetrically" during deep breaths. (ECF 20-1 ¶ 13.) In Dr. Liaw's medical judgment, no diagnostic testing or treatment is warranted for Mr. Stanton's abdomen at present, although he is free to seek further assessment in the future if he remains concerned about this issue. (*Id.* ¶¶ 14-15.)

For completeness, the court notes that Mr. Stanton attached to his complaint what purports to be a letter from a correctional officer, dated early December 2020, stating that while the officer was making his rounds, Mr. Stanton complained to him about his stomach; according to the letter, the officer looked into Mr. Stanton's cell and

4

saw "what appeared to be a small knot or ball shaped object" on Mr. Stanton's stomach. (ECF 9 at 9.) Oddly, Mr. Stanton also attaches what appears to be a witness statement he prepared for this same officer's signature, which he claims the officer refused to sign. (*Id.* at 24.) It is unclear whether the earlier letter is authentic, but even assuming its authenticity, at most it shows that a non-medical staff member saw what appeared to be a small knot on Mr. Stanton's stomach from a distance. Medical records reflect that Mr. Stanton was examined by medical staff both before and after the date of this letter was written, and no mass could be found upon physical examination by three different medical professionals. (ECF 20-2.)

Based on the record, and in light of the discretion that must be afforded to prison medical staff, Mr. Stanton has not sustained his burden of demonstrating that he has a reasonable likelihood of success on the merits of his claim that he is receiving constitutionally inadequate medical care, or that he will suffer irreparable injury if a preliminary injunction is not granted while his claims are resolved.

For these reasons, the motion for a preliminary injunction (ECF 9) is DENIED.

SO ORDERED on April 30, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT