UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER A. STANTON, <br><br> Plaintiff, <br><br> v. <br><br> DR. LIAW, et al., <br><br> Defendants. | CAUSE NO. 3:21-CV-89-JD-MGG |

OPINION AND ORDER

In this lawsuit, Christopher A. Stanton, a prisoner proceeding without a lawyer, was granted leave to proceed on an Eighth Amendment claim against prison physician Dr. Andrew Liaw for monetary damages for failing to provide adequate medical treatment for an alleged mass in his abdomen. (ECF 5.) He was also granted leave to proceed on a claim for permanent injunctive relief against the Warden of Westville Correctional Facility related to his need for medical care for the alleged mass. (*Id.*)

Presently, he moves for a preliminary injunction. (ECF 84.) This is his third such request in the case. His prior motions were denied, as his medical records showed that medical professionals had examined him several times but could not discern any abdominal mass necessitating treatment. (ECF 28, 72.) The present motion alleges that circumstances have changed, namely, that Dr. Liaw and a nurse recently told him that they could see the lump. He claims Defendant Liaw told him he would try to get him approved for an ultrasound, but then took no further action. (ECF 84.) He claims the pain in his abdomen has increased and is interfering with his ability to carry out daily

activities. He asks the court to order that he receive diagnostic testing and treatment for the lump.[1] (ECF 84.) The court ordered a response from the Warden, which has now been received. (ECF 89.)

The response and attachments reflect that Dr. Liaw continues to be of the view that Mr. Stanton does not have an abnormal abdominal mass.[2] (ECF 89-1.) Mr. Stanton's medical records reflect that Dr. Liaw last saw him on March 7, 2022, for a chronic care visit, and that even though other medical issues needed to be addressed, he "spent the vast majority of the visit talking about his reported abdominal mass." (ECF 89-2 at 1.) Mr. Stanton offered various possible diagnoses, such as cancer or a hernia, but Dr. Liaw explained to him why he did not believe these were likely. According to Dr. Liaw, Mr. Stanton became "threatening," trying to discuss a monetary settlement for his lawsuit and claiming he was going to "go after [Dr. Liaw's] medical license." (*Id.* at 1-2.) Thereafter, the visit ended. (*See id.*) Nothing in Dr. Liaw's notations reflect that he acknowledged Mr. Stanton has an abnormal abdominal mass or agreed that an ultrasound is warranted. However, his notes do reflect that this visit was the first time the doctor did not have a witness present when discussing the alleged mass with Mr. Stanton. (ECF 89-2 at 2.)

---

[1] While this motion was being briefed, he filed a fourth motion for a preliminary injunction, reiterating the same arguments and asking that the prison be ordered to immediately provide him with an ultrasound or MRI. (ECF 88.) Because Mr. Stanton raises the same facts and issues in the fourth motion, the court does not find it necessary to obtain another response.

[2] Dr. Liaw previously opined that to the extent there was any variation in the right and left side of Mr. Stanton's abdomen, he believed it to be a more pronounced abdominal muscle on the left side that represented "normal anatomy." (ECF 71-2 at 1.)

2

Mr. Stanton was seen by a different provider, Nurse Practitioner Dishita Patel (a non-party) on April 19, 2022, regarding his complaints of pain in the left upper area of his abdomen. (*Id.* at 3-6.) Nurse Practitioner Patel palpated his stomach but concluded that he "did not appear to have an abdominal mass." (*Id.* at 3.) He also complained about having blood in his stool, but he refused to undergo a rectal exam. (*Id.*) She noted that his bowel sounds were normal. (*Id.*) He reported to her that "all [his] caloric intake is digested at the end of the day," and acknowledged that he was not exercising. (*Id.*) She counseled him on diet and exercise and suggested he increase his water intake.[3] (*Id.*) She also ordered various laboratory tests. (*Id.*)

On April 28, 2022, Nurse Practitioner Angel Watkins (also a non-party) saw Mr. Stanton for complaints of left upper abdominal pain and bloody stools. (*Id.* at 7.) She, too, examined his abdomen. (*Id.*) She determined that his "abdomen assessment appears normal no bulging or protrusion . . . upon bearing down or coughing or with palpation." (*Id.*) She noted a "healed mid lower incision from [history] of abdominal surgery," which he reported had occurred in 2013.[4] She noted that his abdomen did not appear distended, that his bowel sounds were normal, and that he did not appear to be

---

[3] She also counseled him about properly taking his medications for various chronic conditions including diabetes, and considered a change to his insulin regimen after a follow-up. (ECF 89-2 at 3.) Mr. Stanton has a separate lawsuit pending about the care he is receiving for his diabetes. *See Stanton v. Galipeau*, 3:20-CV-666-JD-MGG (N.D. Ind. filed July 29, 2020.) Medical records submitted in that case reflect that his eating habits have fluctuated considerably in the past year, necessitating multiple changes to his insulin regimen, and that he has made a variety of sometimes conflicting dietary requests. *Id.*, ECF 71.

[4] Mr. Stanton told medical staff that he swallowed a "spork" that had to be surgically removed. (ECF 89-2 at 1.) There are no details about the surgery in the present record, as it appears to have occurred prior to his incarceration.

"in any distress" despite his reports of pain. (*Id.*) Nurse Practitioner Watkins determined there was "no need for imaging," but ordered additional laboratory testing, including testing of his stool. (*Id.*)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Furthermore, mandatory preliminary injunctions—"those requiring an affirmative act by the defendant" like the one Mr. Stanton seeks—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is

4

significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining the strict limitations on granting injunctive relief under the Prison Litigation Reform Act).

Under the Eighth Amendment, inmates are entitled to adequate medical care, although "[n]ot every ache and pain or medically recognized condition involving some discomfort" will give rise to an Eighth Amendment claim. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021) (citation omitted). Additionally, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care.") (citation and internal quotation marks omitted). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Furthermore, "[i]t is firmly established . . . that mere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent

professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To prevail, the inmate must show deliberate indifference, "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722.

Far from showing deliberate indifference, the record reflects that Mr. Stanton has continued to receive careful evaluation of his abdomen since the court ruled on his last motion for a preliminary injunction, including being seen three times by different medical staff in the last two months. To date, no medical professional has seen a protrusion or other abnormality in his abdomen. Nevertheless, they have proceeded cautiously and ordered laboratory testing to assess whether he may have a digestive issue requiring treatment. Dr. Liaw opines that Mr. Stanton "does not require any additional or different treatment than what has been provided to him," although he remains able to submit a health care request for any concerns he may have. (ECF 89-1 at 2.) Mr. Stanton believes he is need of an ultrasound or MRI, but there is no indication any medical professional has recommended such testing. A non-party medical professional who examined him late last month specifically concluded that imaging was not warranted. (ECF 89-2 at 7.)

The court must defer to the treatment decisions of prison medical providers unless no minimally competent professional would have responded as they did. *Walker*, 940 F.3d at 965. In light of the medical records, Mr. Stanton has not satisfied this

6

standard. Nor has he demonstrated that he will suffer irreparable injury if he is not granted immediate relief requiring him to be provided an MRI or ultrasound. His request for preliminary injunctive relief will be denied.

As a final matter, by signing the recent motion for a preliminary injunction, Mr. Stanton "certifie[d] that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" it is "not being presented for any improper purpose," and that "the factual contentions" contained within it "have evidentiary support[.]" FED. R. CIV. P. 11(b). However, Dr. Liaw's affidavit and the medical records submitted by the Warden suggest that Mr. Stanton misrepresented the facts when he claimed Dr. Liaw told him that he could see the mass and agreed he needed an ultrasound. A violation of Rule 11 can warrant the imposition of sanctions. FED. R. CIV. P. 11(c).

For these reasons, the plaintiff's motions for a preliminary injunction (ECF 84, 88) are DENIED. The plaintiff is ORDERED to show cause by **June 1, 2022** why the court should not impose sanctions against him under Federal Rule of Civil Procedure 11(c) for making misrepresentations of fact in connection with his request for a preliminary injunction. Any response by Defendants shall be due by **June 10, 2022**.

SO ORDERED on May 9, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT