UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER A. STANTON,

    Plaintiff,

    v.                                              CAUSE NO. 3:21-CV-89-JD

DR. LIAW, et al.,

    Defendants.

OPINION AND ORDER

Christopher A. Stanton, a prisoner proceeding without a lawyer, was granted leave to proceed on an Eighth Amendment claim against prison physician Dr. Andrew Liaw for monetary damages for failing to provide adequate treatment for a "plainly visible, softball sized lump" in his abdomen. (ECF 5.) He was also granted leave to proceed on an official capacity claim for permanent injunctive relief against John Galipeau, the Warden of Westville Correctional Facility, related to his need for medical care for the alleged mass. (*Id.*)

Dr. Liaw and the Warden separately move for summary judgment. (ECF 43, 74.) They argue that the evidence shows that Dr. Liaw has not been deliberately indifferent to his complaints about the alleged abdominal mass. (ECF 44, 75.) Mr. Stanton has responded to the motions[1] (ECF 47, 87, 96), and Defendants have replied thereto. (ECF

---

[1] Mr. Stanton filed three total responses, one in response to Dr. Liaw's motion and two in response to the Warden's motion. Although this is not proper procedure, in deference to his pro se status the court has considered all of his responsive filings in ruling on the motions.

49, 101.) Additionally, attorney Matthew Goldsmith seeks leave to withdraw his appearance on behalf of the Warden (ECF 100), and this request will be granted. The case is now ripe for adjudication.

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). In deciding whether a genuine dispute of fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). At the summary judgment stage, the court cannot "weigh conflicting evidence" or "make credibility determinations," as this is "the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (citations omitted). Instead, the court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

The undisputed facts reflect that Mr. Stanton is 43 years old and has been in the custody of the Indiana Department of Correction ("IDOC") since 2015. (ECF 74-1 at 7, 9.) He has been at Westville Correctional Facility ("Westville") since November 2020. (*Id.* at 10.) Prior to his incarceration, he ran a construction business and performed

skilled labor. (*Id.* at 8.) He has a high school diploma and has completed some college course work, but has no medical training. (*Id.*)

Mr. Stanton has been diagnosed with and takes medication for several chronic conditions, including diabetes, post-traumatic stress disorder, migraines, and night terrors.[2] (*Id.* at 11-15) He is under the regular care of doctors for these conditions, and is seen for chronic care visits approximately every two months. (*Id.*; ECF 44-3 at 1-33.) He can submit requests for health care if he has medical needs in the interim, and he also sees nursing staff daily when they give him his medications. (ECF 74-1 at 15.)

Mr. Stanton claims that he first felt a mass on the upper left side of his abdomen on November 3, 2020. (*Id.* at 17. ) His medical records reflect that on November 16, 2020, he was seen by Nurse Francis Ekeh after he submitted a health care request complaining about a mass in his abdomen. (ECF 44-3 at 1-4.) Upon examination, Nurse Ekeh observed that Mr. Stanton's left and right abdominal quads appeared normal, and she found no visible or palpable abdominal mass. (*Id.*) She noted that his bowel sounds were normal, his vital signs within normal limits, his breathing "easy and unlabored," and his abdomen soft and non-tender upon her physical examination. (*Id.* at 2, 4.) She concluded: "No bulge nor knot observed as alleged[.]" (*Id.* at 2.)

On November 24, 2020, Dr. Liaw saw Mr. Stanton for a chronic care visit, and he again complained about a "palpable growing [abdominal] mass . . . that keeps him from exercising." (*Id.* at 5.) He was concerned that it was cancer. (*Id.*) Dr. Liaw noted that Mr.

---

[2] The record reflects that he has also been diagnosed with antisocial personality disorder and has a history of methamphetamine and alcohol abuse. (ECF 74-1 at 8-9; ECF 44-3 at 6.)

3

Stanton got "on and off the exam table without issue and rotates at the trunk easily as he sits in one spot but turns his body to talk to me as a I walk around him during the course of the physical exam." (*Id.*) He further noted that Mr. Stanton "ambulates with a [normal] gait and without assistance or assistive device." (*Id.*) Dr. Liaw's physical examination of Mr. Stanton revealed no visible or palpable abdominal mass. (*Id.*) The doctor counseled Mr. Stanton that cancer would normally result in weight loss, whereas he had gained six pounds in the prior 30 days.[3] (*Id.* at 6.) The doctor found no evidence of an abnormal mass that would warrant testing. (*Id.*)

On January 5, 2021, Dr. Liaw saw Mr. Stanton for another chronic care visit, during which time Mr. Stanton again raised a concern about an alleged abdominal mass. (*Id.* at 10-14.) He remained concerned that it might be cancer and claimed that several nurses, including Nurse Ekeh, told him they felt the mass. (*Id.* at 10.) Dr. Liaw again physically examined Mr. Stanton but could find no palpable abdominal mass. (*Id.* at 10.) The doctor had Medical Assistant Alice Kiner perform her own physical examination of Mr. Stanton, and she found nothing unusual either. (*Id.*) In addition to the lack of findings, Dr. Liaw noted that during the visit Mr. Stanton was able to rotate his trunk both left and right "without issues." (*Id.*)

On February 23, 2021, Dr. Liaw physically examined Mr. Stanton at a chronic care visit and again could not find any abdominal mass. (ECF 44-3 at 18.) Mr. Stanton reported to Dr. Liaw that he had "mesh" in his stomach from previous surgeries. (*Id.*)

---

[3] The doctor noted that although Mr. Stanton's weight had fluctuated over the course of several months, he had engaged in "multiple hunger strikes" during that period. (ECF 44-3 at 6.)

4

He again reported that nurses told him they felt the mass but Dr. Liaw noted, "I have not seen charting that reflects that." (*Id.*) The doctor again noted that Mr. Stanton was observed to have no abnormalities in twisting and turning his abdominal area. (*Id.*) It was also noted that his gait was normal and that he could walk without any assistance. (*Id.*) Dr. Liaw asked him to take a number of deep breaths and observed that his "chest/abdomen" rose "appropriately and symmetrically" while breathing. (*Id.*)

On April 6, 2021, Mr. Stanton had another chronic care visit scheduled with Dr. Liaw. (ECF 44-3 at 22.) Before Mr. Stanton saw the doctor, Director of Nursing Michelle Rebac conducted an independent examination, asking Mr. Stanton questions and performing her own physical examination. (*Id.*) She did not find any abnormal abdominal mass either. (*Id.*) Dr. Liaw also physically examined him on that date and again found no mass. (*Id.*) On June 8, 2021, Dr. Liaw saw Mr. Stanton for another chronic care visit. (*Id.* at 26.) Mr. Stanton complained about a number of issues, including hip and neck pain, as well as the alleged abdominal mass.[4] (*Id.*) The doctor again examined his abdomen but found no mass. (*Id.* at 27.)

On July 12, 2021, Dr. Liaw saw Mr. Stanton for another chronic care visit. (*Id.* at 30.) Mr. Stanton again complained about the abdominal mass. (*Id.*) The doctor asked Nurse Practitioner Dishita Patel to examine Mr. Stanton's abdomen without giving her

---

[4] The doctor noted that when discussing his hip and neck pain, Mr. Stanton "winces and gasps" with minimal positional changes, but during the earlier part of the examination when they were discussing his diabetes, he had "no problems with range of motion . . . when [the doctor] walked around him while he remained seated." (ECF 44-3 at 26.) The doctor also noted that he watched him go up the stairs after the visit "without issue." (*Id.*)

5

any of his history or other information. (*Id.*) She, too, "did not have any findings that she thought warranted further workup." (*Id.*)

On October 15, 2021, Mr. Stanton was seen again by Dr. Liaw. (ECF 71-1.)[5] The doctor physically examined him again, and did feel a "raised area" on the left side of Mr. Stanton's abdomen that he concluded was a rectus abdominal muscle. (ECF 71-2 at 1.) In his professional opinion, this was "normal anatomy and not an abnormality." (*Id.*) On that date, Dr. Liaw sought a second opinion from Dr. James Jackson, another physician at the prison. (*Id.*) He asked Dr. Jackson to physically examine Mr. Stanton's abdomen, but did not give him any other details "to keep [Dr. Jackson's] findings/assessment as independent . . . as possible." (*Id.*) Dr. Jackson examined him sitting up and lying down and also felt the rectus abdominal muscle, but concluded there were no abnormalities in Mr. Stanton's abdomen. (*Id.*)

In March 2022, Mr. Stanton was seen by Dr. Liaw for a chronic care visit. (ECF 89-2 at 1.) He again expressed concerns about the alleged mass. (*Id.*) He repeated his concern that it might be cancer, but Dr. Liaw explained to him why he did not think that concern was warranted. (*Id.*) He then stated that he had a prior surgery years earlier, in which he swallowed a spork and had to have part of his intestines removed. (*Id.*) He also speculated that it could be a hernia, but Dr. Liaw explained to him that the area he was complaining about would not be where a hernia would form. (*Id.*) They

---

[5] The Warden incorporates by reference additional medical records submitted in response to Mr. Stanton's recent motions for preliminary injunctive relief. (ECF 75 at 3.) Mr. Stanton has had a full opportunity to respond to these records.

6

continued to talk about the issue, but the visit ultimately ended because Dr. Liaw felt that Mr. Stanton was threatening him in talking about his lawsuit and his plans to "go[] after [the doctor's] medical license." (*Id.* at 2.)

Mr. Stanton was seen by two different nurse practitioners (both non-parties) on April 19, 2022, and April 28, 2022. (ECF 89-2 at 3-8.) Notes of the April 19 visit reflect that he reported abdominal pain and blood in his stool, but no loss of appetite. (*Id.* at 3.) The nurse practitioner noted that he did not appear to be any distress, that his bowel sounds were normal, and that he "did not appear to have an abdominal mass." (*Id.*) She noted that he refused a rectal exam on that date. (*Id.*) The practitioner ordered a number of laboratory tests and counseled Mr. Stanton on diet, exercise, and water intake. (*Id.*) Notes of the April 28 visit reflect that a different nurse practitioner observed Mr. Stanton's abdomen to be "nondistended" and his bowel sounds to be normal. (*Id.* at 7.) The practitioner's assessment of his abdomen was "normal" with "no bulging or protrusion to left upper quadrant upon bearing down or coughing or with palpation." (*Id.*) It was noted that despite his reports of pain, he did "not appear to be in any distress." (*Id.*) The practitioner ordered some additional laboratory tests to determine the possible cause of his reports of blood on his stool. (*Id.*)

Under the Eighth Amendment, inmates are entitled to adequate medical care, although "[n]ot every ache and pain or medically recognized condition involving some discomfort" will give rise to an Eighth Amendment claim. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021) (citation omitted). Additionally, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir.

7

2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. "[M]ere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). That deference extends to a medical professional's judgment that a patient does not need treatment because he is malingering or exaggerating his symptoms. *See Fitzgerald v. Greer*, 324 F. App'x 510, 515 (7th Cir. 2009); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428–29 (7th Cir. 1991). Additionally, it is not enough that a medical professional be mistaken in his judgment, as "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To prevail, the inmate must show deliberate indifference, which is "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722.

The record reflects that multiple medical professionals have physically examined Mr. Stanton in response to his complaints about a "plainly visible" abdominal mass the size of a softball, but none found any abnormality. Aside from the lack of any clinical findings, Dr. Liaw has noted on multiple occasions that Mr. Stanton was observed to

have no difficulty ambulating, breathing, or twisting left and right. (ECF 44-3 at 5, 10, 18.) Dr. Liaw's professional opinion is that Mr. Stanton does not have an abnormal abdominal mass warranting treatment. (ECF 44-2 ¶¶ 14-15.)

Mr. Stanton continues to assert that he has an abdominal mass that is now "bigger than a softball." (ECF 74-1 at 37.) He believes medical staff have not palpated his stomach in a proper way. In his view, they should not push down on his abdomen when examining him, but should instead rub his abdomen "up and down and side to side." (*Id.* at 21-22.) Because he is the non-movant, the court must construe all facts and draws all reasonable inferences in his favor. *Dunn*, 880 F.3d at 905. However, the bare fact that he claims to have an untreated condition does not establish a constitutional violation. *See Lloyd v. Moats*, 721 F. App'x 490, 494–95 (7th Cir. 2017). Mr. Stanton is not competent to diagnose himself, nor does he have medical training on how to conduct a proper abdominal examination. *Id.* ("[Plaintiff's] disagreement is irrelevant. He is not competent to diagnose himself, and he has no right to choose his own treatment.").

Instead, the court must defer to the treatment decisions of prison medical providers unless no minimally competent professional would have responded as they did. *Walker*, 940 F.3d at 965. Based on the record, no reasonable jury could conclude that Dr. Liaw knowingly disregarded a substantial risk of serious harm to Mr. Stanton, or that his treatment decisions have been beyond the scope of reasonable professional judgment. To the contrary, the record reflects that Mr. Stanton has received careful evaluation of his abdomen by Dr. Liaw and other medical staff from the time he first raised this issue in November 2020 continuing through April 2022. The record shows

9

that Dr. Liaw has proceeded cautiously by obtaining second opinions from other medical professionals, and that he has attempted to keep their opinions non-biased by omitting information about Mr. Stanton's history and his own findings. Mr. Stanton believes he is in need of an ultrasound or MRI (ECF 47), but as stated, he is not competent to diagnose himself or determine whether diagnostic testing is medically warranted. *Lloyd*, 721 F. App'x at 494–95.

Mr. Stanton also claims that several nurses, including Nurse Ekeh, have told him that they felt or saw the mass. (ECF 87, 96.) Mr. Stanton does not submit affidavits or sworn declarations from any nurses, however, and his own account of what these non-parties told him is inadmissible hearsay. "Inadmissible hearsay evidence may not be considered on summary judgment." *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 n.3 (7th Cir. 2021). Even assuming for the sake of argument he could present this evidence in an admissible form and that the nurses would testify as he claims, at most it would show that medical professionals have differing opinions about whether he has an abnormal abdominal mass.[6] Mere disagreement among medical professionals does not establish an Eighth Amendment violation. *Lockett*, 937 F.3d at 1024.

Mr. Stanton also points to a document attached to his complaint, specifically, what purports to be a letter from prison case worker W. Huffman dated early December 2020. (ECF 47, 96; *see also* ECF 1-1.) The letter, addressed to "To Whom It May Concern," states that while Mr. Huffman was making his rounds approximately a month earlier,

---

[6] Notably, as to Nurse Ekeh, his assertion conflicts with her notations in the medical record stating "[n]o bulge nor knot observed as alleged[.]" (ECF 44-3 at 2.)

Mr. Stanton complained to him about his abdomen. (ECF 1-1.) According to the letter, Mr. Huffman looked into Mr. Stanton's cell and saw "what appeared to be a small knot or ball shaped object that appeared to be in his stomach." (*Id.*)

Mr. Huffman's account is not submitted in the form of an affidavit or sworn declaration, nor is there any apparent basis for this letter to be submitted as evidence at trial. *Steffek v. Client Servs., Inc.*, 948 F.3d 761, 769 (7th Cir. 2020) ("Documents must be authenticated by an affidavit that lays a proper foundation for their admissibility, even at the summary judgment stage."). But even assuming the letter is authentic and could be submitted in an admissible form, at most it shows that a non-medical staff member saw from a distance what "appeared" to be a small knot on Mr. Stanton's stomach. Mr. Stanton clarified at his deposition that Mr. Huffman did not touch his abdomen and instead was looking at him "through the window." (ECF 74-1 at 18.) Medical records reflect that Mr. Stanton was examined by Dr. Liaw and other trained medical professionals both before and after the date of this letter was written, and no mass could be found when they palpated his abdomen. Mr. Stanton has not come forward with evidence to show that no competent medical professional would have responded as Dr. Liaw did, when he and several other trained medical professionals were unable to feel any abdominal mass. *Walker*, 940 F.3d at 965.

In his most recent filings, Mr. Stanton claims that circumstances have changed and that Dr. Liaw told him at a recent medical visit that he "could see the difference" between the two sides of his abdomen and agreed he needed an ultrasound. (ECF 96 at 3-4.) Dr. Liaw disputes ever telling Mr. Stanton that he could feel an abnormal mass in

11

his abdomen. (ECF 89-1.) The court cannot decide who is telling the truth at the summary judgment stage, and instead must accept Mr. Stanton's version as true since he is the non-movant. *Dunn*, 880 F.3d at 905; *Omnicare*, 629 F.3d at 704-05. But Mr. Stanton's version of events at most shows that Dr. Liaw has continued to evaluate and monitor Mr. Stanton's abdominal issues and is willing to revise his treatment plan if necessary. Although Mr. Stanton disagrees with Dr. Liaw's evaluation and treatment decisions, he has not come forward with evidence from which a reasonable jury could conclude that no competent medical professional would have acted as Dr. Liaw did under the circumstances. *Walker*, 940 F.3d at 965. Therefore, Defendants are entitled to summary judgment.

In closing, two other matters must be addressed. First, Mr. Stanton moves for a "default judgment" against both Defendants. (ECF 94.) This motion has no merit. The Defendants timely answered the complaint and have actively defended this case including, as outlined in this order, moving for summary judgment in their favor.[7] (ECF 24, 26, 43, 74.) They have not "failed to plead or otherwise defend" in response to this lawsuit, and there is no basis to hold them in default or enter a default judgment against them. FED. R. CIV. P. 55(a). The motion is denied.

Second, the court previously ordered Mr. Stanton to show cause why sanctions should not be imposed against him for violating Federal Rule of Civil Procedure 11. (*See*

---

[7] If Mr. Stanton is arguing that the Warden did not file a timely response to his third motion for a preliminary injunction, this is inaccurate; the response was filed on May 6, 2022, in accordance with the court's order. (ECF 86, 89.)

ECF 91.) After reviewing Mr. Stanton's response to the show cause order (ECF 97), the court declines to impose sanctions. In the court's view, the interests of justice are best served simply by bringing this case to a conclusion.

For these reasons, the court:

(1) GRANTS the motion to withdraw the appearance of attorney Matthew Goldsmith (ECF 100);

(2) DENIES the plaintiff's motion for a default judgment (ECF 94);

(3) GRANTS the motions for summary judgment (ECF 43, 74) and ENTERS judgment in favor of Defendants; and

(4) DIRECTS the clerk to close this case.

SO ORDERED on June 23, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT